UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 4:25-MJ-6252 PLC |
| | ) | | |
| SAIF FAIQ, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## UNITED STATES OF AMERICA'S
## MOTION FOR PRETRIAL DETENTION AND HEARING

COMES NOW the United States of America and moves the magistrate judge to order defendant detained pending trial. The United States of America states as follows in support of its motion:

1. Under the Bail Reform Act of 1984, 18 U.S.C. § 3142(e), a defendant may be detained without bail prior to trial where, after a hearing, a judicial officer finds that the United States has shown by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community. In the alternative, the United States may show by a preponderance of the evidence that defendant is a risk of flight. Stated another way, no condition or set of conditions will reasonably assure the defendant's appearance. *See* 18 U.S.C. § 3142(c), (e)-(f); *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (*citing United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (*quoting United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (en banc))); *United States v. Dorsey*, 852 F.2d 1068, (8th Cir. 1988); *United States v. Lewis*, 676 F. Supp. 1008, 1018 (E.D. Mo. 1991); *United States v. Payne*, 660 F. Supp. 288, 291 (E.D. Mo. 1987).

2. Furthermore, the Bail Reform Act describes the factors to be considered in determining whether the required conditions of release exist. 18 U.S.C. § 3142(g). The court is directed to take into consideration the available information concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence…or involves a…firearm, explosive, or destructive devise;
>
> (2) the weight of the evidence against the person;

>    (3)   the history and characteristics of the person, including - - (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings…;
>
>    (4)   the nature and seriousness of the danger to any person or the community that would be posed by the person's release…*Id*.

In doing so, it is appropriate for this court to consider challenged evidence in ruling on a motion for pretrial detention. *United States v. Apker*, 964 F.2d 742, (8th Cir. 1992) (citing 18 U.S.C. § 3142(f) (rules concerning admissibility of evidence in criminal trials do not apply in detention hearings); *United States v. Angiulo*, 755 F.2d 969, 974 (1st Cir. 1985) (challenged information via electronic surveillance may be considered regarding detention ruling at least until court determines information was illegally obtained)).

      3.  Detention is appropriate here pursuant to Title 18, United States Code, Sections 3142(g)(1), 3142(g)(2), 3142(g)(3) and Section 3142(g)(4). The nature and circumstances of the offenses merit detention. A federal grand jury in the District of Connecticut has charged the defendant and others with two crimes. Count One charges the defendant with a Hobbs Act conspiracy and attempt, in violation of Title 18, United States Code, Sections 1951 and 2. If convicted on that count, the defendant faces a 20-year maximum prison term. Count Two charges the defendant with a kidnapping conspiracy, in violation of Title 18, United States Code, Section 1201. If convicted on that count, the defendant faces a maximum of life imprisonment. Accordingly, the charges against the defendant are exceedingly serious. And the facts confirm the severity of the crimes. In late August 2024, the defendant and three others flew from St. Louis, Missouri to Westchester County, New York and from there drove to Connecticut. The reason for their trip was the planned home invasion and robbery/extortion of a young man in Danbury, Connecticut who was known to have tens of millions of dollars in Bitcoin in his possession. The defendant recruited his St. Louis associates by promising them a hefty payment for their services, handled certain logistics for the trip, acted as the go-between for the planners of the scheme (including the defendant's brother) and those who would perpetrate the hands-on aspects of the crime, and was set to handle the forced transfer of Bitcoin from the intended victim. The defendant and his associates stalked the intended target and his parents over the course of two days, waiting for the opportunity to force their way into the target's home and coerce him through violence and threats to transfer the millions in cryptocurrency to accounts controlled by the defendant and his co-conspirators. When the plan evolved to include the forced kidnapping of the intended victim's middle-aged parents, the defendant's St. Louis compatriots

expressed reservations as they believed they were unduly exposed. The defendant made efforts, along with his brother, to convince them to see the crime through to fruition. When those efforts failed, another crew arrived from Miami and did in fact forcibly abduct the parents – dragging them from their vehicle on a public street, beating them with bats and fists, throwing them into the back of a van, binding them with duct tape, threatening to kill them, and driving them in the direction of a rented house in a different town where they planned to hold them hostage. The victims were saved by the quick action of Danbury Police who had been alerted promptly by several eyewitnesses to the crime. But the victims were seriously injured and severely traumatized. Thus, the nature and the circumstances of the offenses charged – both involving the intent to use extreme violence -- weigh heavily in favor of detention.

4. The weight of the evidence against the defendant is strong and supports detention as well. Substantial evidence, including phone data and other information obtained by the agents, shows the defendant's efforts to recruit the others to travel with him to Connecticut to participate in the scheme. Further, data from his phone places him in Connecticut during the relevant time period as do witnesses. Additionally, data extracted from phones of conspirators includes messages between the defendant and various conspirators during the crimes and after, including those that discuss the defendant's concern that his associates will talk to law enforcement about his participation in the crimes. At the time of his arrest, agents executed a search warrant at his home. Items found there corroborate evidence already obtained by investigators of the defendant's involvement in the charged offenses.

5. Defendant's personal characteristics weigh in favor of detention too. Despite his youth, the defendant has been arrested four times by police in St. Louis. Each arrest includes resisting or interfering with police, often alongside several other charges. While his first two arrests (in 2021 and March 2023) have no disposition shown, the defendant was arrested on May 24, 2023 for unlawful use of a weapon – possession of a weapon/felony controlled substances offense, for unlawful delivery of a controlled substance, unlawful possession of drug paraphernalia, tampering with a motor vehicle (1st degree) and for resisting arrest. Ultimately, he was convicted of resisting arrest by fleeing and creating a substantial risk of serious injury/death and sentenced to a 3-year term of probation. On December 6, 2023, he was arrested again for similar charges – tampering with a motor vehicle 1st degree, resisting arrest by fleeing and creating substantial risk of serious injury/death, resisting/interfering with a felony arrest, and resisting/interfering with arrest/detention/stop. That case was resolved with a plea to resisting/interfering and a 2-year probationary sentence in April 2024. The defendant committed the crimes (and traveled out of state to do so) just a few months after being placed on probation and SIS status. His record shows that he has a penchant for fleeing from police and resisting arrest

(and putting others at risk when he does so) as well as involvement with weapons and drugs.[1]

6.  Danger to the community may be established by presenting "significant evidence linking [the defendant] to the violent crime for which he was indicted." *Abad*, 350 F.3d at 797 (*citing Mercedes*, 254 F.3d at 435, 438). As noted above, strong evidence links the defendant to the charged conspiracies which involve the brazen, violent abduction of two people on a public street in the middle of the day. The United States has established the requisite link.

Second, the defendant is a danger to potential witnesses and others who have cooperated in the investigation of this case. We are aware that he has maintained contact with persons he recruited for the charged crimes and that he is concerned about what they might say if questioned. To release the defendant, now that he has been indicted for these significant crimes, would be dangerous to others.

7.  Other circumstances show the defendant to be a flight risk as well as a danger. During the search of his home, agents found a fraudulent identification with the defendant's photograph and a name other than his own. Further, we are aware that the defendant has an Iraqi passport that was not found by agents during the search. Moreover, on September 19, 2024, after the federal arrests of certain persons who were associated with the Danbury target in this case, the defendant communicated to his brother his concern that those he recruited to go to Connecticut with him would talk to law enforcement. He texted his brother -- "I gotta pack me a get out of the country bag." As the defendant has significant ties outside this country, the statement was not an idle one. His brother, also charged in this case, traveled outside the country extensively before his detention after a federal arrest in a separate case from Los Angeles in September 2024. The California case against the defendant's brother involves his participation in a fraudulent scheme that netted millions of dollars and his exploitation of his corrupt relationship with members of law enforcement, including those who had participated in federal task forces and accessed federal databases. These circumstances, including the strong possibility of available financial resources, support a finding of risk of flight.

Furthermore, the substantial punishment the defendant is facing at the federal level where parole has been abolished provides an overwhelming incentive to flee to avoid prosecution. *See United States v. Kaplan*, Case No. 4:06CR337 CEJ (E.D. Mo. June 13, 2007) (Medler, J.) (defendant detained where, among other things, maximum amount of over 70 years of imprisonment provided incentive to flee) (*citing United States v. Martir*, 782 F.2d 1141, 1147 (2nd Cir. 1986) (maximum combined terms of imprisonment of a 105 years creates potent incentives to flee); *United States v. Arndt*, 329 F. Supp. 2d 182, 199

---

[1] While agents did not find guns when they searched his house at the time of his arrest, they did find a live round of ammunition.

(D. Mass. 2004) (facing lengthy term of imprisonment is in itself an incentive to flee); *United States v. Lewis*, 767 F. Supp. 1008, 1010 (E.D. Mo. 1991) (facing severe sentence if convicted provides incentive to flee)). In fact, a court's concern that the possibility of life imprisonment may heighten the risk of flight is relevant and a valid, singular basis for detention. *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994) (no constitutional violation in long pretrial detention where prospect of lengthy term in prison provides great incentive to flee); *United States v. Gonzalez*, 995 F. Supp. 1299, 1303 (D. N.M. 1998); *United States v. Nichols*, 897 F. Supp. 542, 547 (W.D. Okla. 1995) (prospect of lengthy prison term, life imprisonment, or death penalty provides defendant with great incentive to flee). Indeed, as noted above, the defendant's own text messages show his incentive to flee. Other circumstances – including the defendant's use of fraudulent identification and his substantial ties outside the country – indicate that he would have options for flight that other defendants lack.

WHEREFORE, the United States respectfully requests this magistrate judge to order defendant detained prior to trial.

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney

/s/ *Angie E. Danis*
ANGIE DANIS, #64805MO
Assistant United States Attorney
111 S. 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200
Angie.Danis@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was delivered to all parties of record via the Court's CM/ECF filing system. The Government has also delivered, via electronic mail, this 13th day of November, 2025 a copy of this motion to Assistant Federal Public Defender Kevin Gau, who represented the above-captioned defendant at his Rule 5 hearing.

/s/ *Angie E. Danis*
ANGIE DANIS, #64805MO
Assistant United States Attorney